GUILLERMO ATILES MORÉU, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; FORTUNATO DELGADO OSORIO, Deceased Workman.

No. 366. Argued December 12, 1946.—Decided January 13, 1947.

A. de Jesús Matos, A. Sandín del Manzano, and Ismael Marrero for petitioner. Diego O. Marrero for the beneficiaries of the deceased workman.

Mr. Chief Justice Travieso delivered the opinion of the court.

Fortunato Delgado Osorio worked for the War Emergency Program as laborer in the reparation of a public school in the town of Carolina. On October 8, 1945, after finishing his work at 4:00 P.M., he went to his home. Five days later he was taken to a hospital, where he died a few minutes after his arrival there.

The Manager of the State Insurance Fund ordered that the case be closed and filed away, on the ground that from the investigation carried out it was not proved that an accident had occured, or that the death of the laborer was caused by an occupational disease acknowledge by the Act or acquired as a consequence of his work. The beneficiaries of the workman appealed to the Industrial Commission and the latter, on July 15, 1946, rendered a decision holding that the laborer had died of pneumonia, contracted as a result of his idiopathic condition (grippe) being aggravated in the course of his work and as a consequence thereof. The commission reversed the decision of the manager and ordered the payment of the corresponding compensation to the beneficiaries. Since a reconsideration requested by the manager was denied, he has instituted the present proceeding.

The petitioner urges that the Industrial Commission erred in holding that a case, in which no accident was proved under the Workmen's Compensation Act, is compensable.

According to the evidence introduced at the hearing before the commission, the work performed by the workman on October 8 consisted in chipping off the old plaster from the walls, using for this purpose a chisel and a spalling hammer, which weighed approximately two pounds. In that work much dust was raised, which caused the workman to sneeze and blow his nose frequently. The laborer who was a young, strong, and healthy man, on that day complained of a severe headache, perspired freely, and as it was very sunny in the place where he was working the foreman (*maestro de obra*) changed him to another place where he might work in the shade. On that same day four laborers were absent from work because they were suffering from grippe. On October 8, when he started for work, the workman had a very bad cold, coughed, and had nasal congestion, and when he returned to his home in the afternoon, he had fever. On the following day he again had fever and spitted blood. The doctor prescribed twice for him without seeing him. On October 13, upon his condition becoming worse, he was taken to Dr. González, and when the latter examined him, he found him dead.

Dr. González testified that when he saw the workman in the operating room, he was already dead; that he was told that the patient had been suffering for five days from grippe, hard breathing, and pain in the chest, especially over his heart; that he had to sign the death certificate "and I assumed that it was angina pectoris, believing that it did not exclude the possibility of being penumonia"; that pneumonia can produce acute pain over the heart region; and that given the antecedents of this case, there is a strong possibility that the cause of the death was pneumonia.

Dr. Vadi, after hearing all the evidence introduced, testified that in his opinion "it is most likely that the laborer has died of pneumonia"; that a person suffering from grippe

who works while exposed to the sun, perspiring, and inhaling dust, lowers his resistance below normal and runs the risk of a complication; that a cold does not kill anybody, and that, up to the present, no grippe has been known to have caused death; that for a grippe attack to kill a person, he must have had a complication, pneumonia, bronchopneumonia, or double pneumonia; that the most probable complication in a case of grippe is pneumonia.

Dr. García Estrada testified that all that may be said regarding this case is simply a supposition; that the correct thing would have been to make an autopsy in order to determine the real cause of the death; that a doctor can not reach an exact conclusion of what was the cause of the death of this man; that he thinks it possible that the workman herein died of angina pectoris; and that in order to establish conclusively that the laborer died of pneumonia, an autopsy should have been made.

Dr. Cordero testified at great length, reaching the conclusion that in his opinion the laborer died of angina pectoris. Furthermore, he stated that "any of the pneumonic complications can be produced by an attack of influenza; it could have been bronchopneumonia, as well as lobar pneumonia."

The Workmen's Accident Compensation Act, No. 45 approved April 18, 1935, Sess. Laws, p. 251, provides as follows:

"Section 2.—The provisions of this Act shall be applicable to all such workman and employees working for the employers to whom the following paragraph refers, as suffer injury, are disabled, or lose their lives by reason of accidents caused by any act or function inherent in their work or employment, when such accidents happen in the course of said work or employment, and as consequence thereof; or such as suffer disease or death caused by the occupations specified in the following section."

The finding made by the commission as to the cause of the death of the workman is supported by the oral and expert testimony. We can not say that the commission erred in holding that the dust inhaled by the laborer during the

course of his work was the proximate cause of the complication which produced his death. It is our duty to respect that finding. *Montaner* v. *Industrial Commission*, 54 P.R.R. 686.

■■ There is no doubt that if the workman, due to his idiopathic condition on October 8, had fallen while working and lost his life as a consequence of such fall, his beneficiaries would have been entitled to the compensation granted by the Act. In *Montaner* v. *Industrial Commission*, 55 P.R.R. 867, upon affirming a decision of the commission in favor of the beneficiaries of a workman who, while opening a ditch in a sugar-cane plantation, suffered an epileptic attack, fell in the ditch, and was asphyxiated, we stated:

"If the fall of the workman Juan Matos had been caused by his own negligence, then surely the State Insurance Fund would not have been able to allege the defense of contributory negligenc in opposition to the claim. We see no reason whatsoever to establish a difference between the contributory negligence and the idiopathic condition of a workman as the determining causes of an accident when neither the one nor the other appear included among the circumstances which according to Section 4 of the Act, *supra*, preclude the award of a compensation."

See *Montaner* v. *Industrial Commission*, 54 P.R.R. 113; *Montaner* v. *Industrial Commission*, 55 D.P.R. (*per curiam*) 985; and *Montaner* v. *Industrial Commission*, 54 P.R.R. 757.

In the case at bar, the workman was ill at the time he started his work on October 8, 1945. He complained of a headache, coughed, and sneezed frequently, which symptoms indicated that he was suffering from the disease known as grippe, a fruitful ground for the development of a pneumonic process fatal to him. Notwithstanding the knowledge the employer had of the idiopathic condition of the workman, it not only allowed him to continue working, but also assigned him a task which involved his exposure to the sun and in addition, required a great and continuous physical effort, raising much dust, which upon being inhaled by the workman necessarily

increased his idiopathic condition and lowered his resistance, until it made him a victim of the pneumonic process which caused his death.

The text writer Horowitz, in his work entitled ''Injury and Death Under Workmen's Compensation Laws,'' 1944 ed., p. 147, says:

''*Diseases* do not necessarily arise out of the employment. But where a causal relation to the employment is shown, and there is evidence of repeated though minute traumas to the body, or bodily harm results from exposure or exertion, even over a period of months rather than at one specific time, the disease is compensable, whether as a brand-new disease, or as an aggravation of a pre-existing disease. Thus, inhalation of sand dust is considered as repeated trauma to the lungs, and if it aggravates a dormant tuberculosis, or causes silicosis, these diseases, being causally related to the employment, arise out of it. Aggravation of many usual as well as unusual types of diseases are clearly compensable. Thus many states have made awards on the ground that a *cancer* or malignant growth (whose cause is generally unknown) was aggravated and its spread hastened: Even a finding of original causation stands. Where an award is based on medical testimony that causal relation existed, it will stand, regardless of the court's private views on cancer.''

See *Dupre* v. *Atlantic Refining Co.*, 98 Conn. 646, 120 Atl. 288.

Since the expert testimony shows that there is the possibility that the workman died of pneumonia, caused by the inhalation of the dust raised during the course of the employment, we consider that the Industrial Commission did not err in rendering the decision sought to be reversed, which should be affirmed.

Mr. Justice Snyder did not participate herein.